IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR. No. CR 08-24 ML |
| | : | |
| | : | In violation of: |
| v. | : | 18 U.S.C. § 1344(1) |
| | : | |
| | : | |
| MICHAEL ROBITAILLE | : | |

FILED
MAR 18 2008
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

INFORMATION

The United States Attorney charges:

COUNT ONE

Introduction

At all times material to this Information:

1. Commerce Bank Trust ("Commerce Bank") was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("the FDIC").

2. Domestic Bank was a financial institution, the deposits of which were insured by the FDIC.

3. Bank Rhode Island was a financial institution, the deposits of which were insured by the FDIC.

The Scheme To Defraud

4. Beginning on or about May 18, 2006, and continuing until on or about June 30, 2006, within the District of Rhode Island, the defendant MICHAEL ROBITAILLE knowingly and with the intent to defraud devised and executed and attempted to execute a scheme to

defraud Domestic Bank and Bank Rhode Island (collectively "the Banks").

5. The object of the scheme was to deprive the Banks of funds by knowingly making deposits backed by insufficient funds into the defendant's accounts at the Banks, thereby artificially inflating the balances in those accounts, and thereafter writing checks and making cash withdrawals against the accounts before the Banks were aware that the deposited checks were not backed by sufficient funds.

6. It was the practice of Domestic Bank and Bank Rhode Island to forward to processing centers checks drawn upon other banks and presented for deposit into its accounts. Ultimately, these checks would be transmitted to the bank of origin for payment. There would be a delay of at least one day, and often several days, between the time that the check was deposited into the bank and the time that the check was processed, transmitted and ultimately presented to the bank of origin to be paid from funds available in the account of the check writer.

7. It was the practice of Domestic Bank and Bank Rhode Island to immediately credit the bank accounts of customers with the face value of checks deposited into their accounts, without requiring a delay to verify that the checks so deposited would be honored by the banks upon which they were drawn.

8. The defendant's scheme to defraud operated in the following manner:

a. On or about May 18, 2006, the defendant entered the Milford, Massachusetts branch of Commerce Bank and opened a checking account, Account #92362809 ("the Commerce Bank Account",) with a $25.00 cash deposit. At no time thereafter did the defendant deposit any additional funds into the Commerce Bank Account.

The Domestic Bank Accounts

b. On or about May 23, 2006, the defendant entered the Warwick, Rhode Island, branch of Domestic Bank and opened a checking account, Account #7057572, ("Domestic Bank Account #7057572"), with a $1.00 cash deposit.

c. From on or about May 31, 2006 through June 12, 2006, the defendant deposited four checks drawn on the Commerce Bank Account into Domestic Bank Account #7057572. Specifically, on May 31, 2006, the defendant entered the Johnston, Rhode Island, branch of Domestic Bank and deposited a $15,000 check drawn on the Commerce Bank Account into Domestic Bank Account #7057572. On June 6, 2006, the defendant entered the Cranston, Rhode Island branch of Domestic Bank and deposited a $15,000 check drawn on the Commerce Bank Account into Domestic Bank Account #7057572. On June 8, 2006, the defendant entered the North Kingstown, Rhode Island, branch of Domestic Bank and deposited a $7500 check drawn

on the Commerce Bank Account into Domestic Bank Account #7057572. On June 12, 2006, the defendant entered the North Kingstown branch of Domestic Bank and deposited a $10,000 check drawn on the Commerce Bank Account into Domestic Bank Account #7057572. At the time the defendant deposited these checks, he knew that the balance in the Commerce Bank Account was insufficient to pay the checks when they were ultimately presented to Commerce Bank for collection. Pursuant to its policy, described in ¶7, Domestic Bank immediately credited Account #7057572 with the amount of the checks. Defendant's purpose in making these fraudulent deposits was to artificially inflate the balance of Domestic Bank Account #7057572, so that he could obtain money for his own use and benefit. Defendant never made any other deposits into Domestic Bank Account #7057572.

d. From on or about May 30, 2006 through June 18, 2006, the defendant obtained funds for his own use and benefit by writing checks to third parties drawn on Domestic Bank Account #7057572 and by making cash withdrawals from that Account. At the time he wrote these checks to third parties and made these cash withdrawals, the defendant knew that there were insufficient funds in Domestic Bank Account #7057572 to pay the checks when they were ultimately presented to Domestic Bank for collection and to cover the cash withdrawals.

e. On or about June 8, 2006, the defendant entered the North Kingstown branch of Domestic Bank and opened a second checking account, Account #8516423 ("Domestic Bank Account #8516423"). The defendant then transferred $2500 into this account via a $2500 check made payable to himself and drawn on Domestic Bank Account #7057572. On or about June 12, 2006, the defendant entered the North Kingstown branch of Domestic Bank and deposited a check drawn on the Commerce Bank Account in the amount of $5000 into Domestic Bank Account #8516423. At the time of these two deposits, the defendant knew that the balance in the Commerce Bank Account and in Domestic Bank Account #7057572, respectively, were insufficient to cover the deposits. The purpose of these deposits was to artificially inflate the balance of Domestic Bank Account #8516423 and to obtain the benefit of said inflated balance.

f. From on or about June 9, 2006 through June 12, 2006, the defendant obtained funds for his own use and benefit by writing a check made payable to cash drawn on Domestic Bank Account #8516423 and by making cash withdrawals from that Account. At the time he wrote this check and made these cash withdrawals, the defendant knew that there were insufficient funds in Domestic Bank Account #8516423 to cover them.

g. On or about June 12, 2006, the defendant entered the North Kingstown Branch of Domestic Bank and opened a savings

account, Account #4192971 ("Domestic Bank Account #4192971"). On or about June 12, 2006, the defendant transferred $2000 from Domestic Bank Account #7057572 into Domestic Bank Account #4192971. At the time of this transfer, the defendant knew that there were insufficient funds in Domestic Bank Account #7057572 to cover the transfer. The purpose of the transfer was to artificially inflate the balance of Domestic Bank Account #4192971 and to obtain money for the defendant's use and benefit.

h. On or about June 12, 2006, the defendant made a cash withdrawal in the amount of $1800 from Domestic Bank Account #4192971. At the time he made this withdrawal, the defendant knew that there were insufficient funds in the Domestic Bank Account #4192971 to cover the withdrawal.

<u>The Bank Rhode Island Accounts</u>

i. On or about June 16, 2006, the defendant opened a checking account and two savings accounts at Bank Rhode Island ("Bank Rhode Island Accounts"). Between on or about June 16, 2006 and June 21, 2006, the defendant deposited checks drawn on the Commerce Bank Account and Domestic Bank Account #7057572 into the Bank Rhode Island Accounts. Specifically, on June 16, 2006, at the East Greenwich, Rhode Island, branch of Bank Rhode Island, the defendant made a split deposit into the three accounts, utilizing a $20,000 check drawn on Domestic Bank Account #7057572 and made payable to cash. Of the $20,000, $7000 was deposited into Bank

Rhode Island Checking Account #191006378, $3000 was deposited into Bank Rhode Island Savings Account #1930016118, and $10,000 was deposited into Bank Rhode Island Savings Account #1930016271. Also on June 16, 2006, ROBITAILLE entered the Smithfield, Rhode Island, branch of Bank Rhode Island and deposited a $2000 check drawn against the Commerce Bank Account and made payable to cash into Savings Account #1930016118. On June 19, 2006, ROBITAILLE entered the Centerville Road branch of Bank Rhode Island in Warwick, Rhode Island, and deposited a $2000 check drawn against the Commerce Bank Account and made payable to cash into Checking Account #191006378. At the time of these three deposits, the defendant knew that there were insufficient funds in Domestic Bank Account #7057572 and in the Commerce Bank Account, respectively, to cover the deposits. The purpose of the deposits was to artificially inflate the balances of the Bank Rhode Island Accounts and to obtain money for the defendant's use and benefit.

j. During the period June 16, 2006 through June 24, 2006, the defendant wrote checks to third parties drawn on the Bank Rhode Island accounts totaling $1185 and made cash withdrawals totaling $4515. At the time he wrote these checks and made these cash withdrawals, the defendant knew that there were insufficient funds in the Bank Rhode Island accounts to pay the checks when they were ultimately presented to Bank Rhode Island for collection and to cover the cash withdrawals.

9. During the period May 18, 2006 through June 24, 2006, between Domestic Bank and Bank Rhode Island, the defendant opened six accounts, into which he deposited eleven dollars of good funds. The defendant thereafter wrote checks against and made cash withdrawals from these accounts totaling $92,001.64.

EXECUTION OF THE SCHEME

10. In execution of the scheme to defraud Domestic Bank and Bank Rhode Island, on or about each of the dates shown below, the defendant did commit the following acts, namely, the deposit of checks or transfer of funds into accounts at Domestic Bank and Bank Rhode Island, knowing at the time of such deposits and transfers that such deposits and transfers were backed by insufficient funds and intending that the balances in those accounts be artificially inflated:

| DATE | CHECK NO./ TRANSFER | FACE AMOUNT | ACCOUNT DRAWN ON | ACCOUNT DEPOSITED INTO |
|---|---|---|---|---|
| 5/31/06 | 1128 | $15,000 | COMMERCE BANK ACCOUNT | DOMESTIC BANK ACCOUNT #7057572 |
| 6/6/06 | 1014 | $15,000 | COMMERCE BANK ACCOUNT | DOMESTIC BANK ACCOUNT #7057572 |
| 6/8/06 | 1145 | $7500 | COMMERCE BANK ACCOUNT | DOMESTIC BANK ACCOUNT #7057572 |
| 6/12/06 | 1019 | $10,000 | COMMERCE BANK ACCOUNT | DOMESTIC BANK ACCOUNT #7057572 |
| 6/8/06 | 133 | $2500 | DOMESTIC BANK ACCOUNT #7057572 | DOMESTIC BANK ACCOUNT #8516423 |
| 6/12/06 | 1018 | $5000 | COMMERCE BANK ACCOUNT | DOMESTIC BANK ACCOUNT #8516423 |

| | | | | |
|---|---|---|---|---|
| 6/12/06 | TRANSFER | $2000 | DOMESTIC BANK ACCOUNT #7057572 | DOMESTIC BANK ACCOUNT #4192971 |
| 6/16/06 | 166 | $20,000 | DOMESTIC BANK ACCOUNT #7057572 | BANK RHODE ISLAND CHECKING ACCOUNT 191006378, BANK RHODE ISLAND SAVINGS ACCOUNT 1930016118, BANK RHODE ISLAND SAVINGS ACCOUNT 1930016271 |
| 6/16/06 | 1023 | $2000 | COMMERCE BANK ACCOUNT | BANK RHODE ISLAND SAVINGS ACCOUNT 1930016118 |
| 6/19/06 | 1027 | $2000 | COMMERCE BANK ACCOUNT | BANK RHODE ISLAND CHECKING ACCOUNT 191006378 |

All in violation of Title 18, United States Code, Section 1344(1).

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

PETER F. NERONHA
Assistant U.S. Attorney

STEPHEN G. DAMBRUCH
Chief, Criminal Division

Date: March 18, 2008